

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 19, 2023

**BY ECF AND E-MAIL**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Haljoubey Dunlap*, 23 Cr. 197

Dear Judge Engelmayer:

    The Government respectfully submits this letter in support of its motion for a review of Magistrate Judge Jennifer Willis's order granting defendant Haljoubey Dunlap's ("Dunlap" or the "defendant") bail application. Dunlap has been indicted for being a felon in possession of a firearm for brandishing and shooting a firearm on or about December 31, 2022. In light of the nature and circumstances of the charged offense, the strength of the evidence, and Dunlap's criminal history, the Government respectfully submits that no bail conditions can reasonably be expected to ensure that he does not endanger the community.

### I. Background

#### A. Procedural History

    On or about April 13, 2023, a grand jury sitting in this District returned a sealed one count indictment (the "Indictment") charging Dunlap with possessing a gun and ammunition after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Dunlap was arrested April 18, 2023 and presented before Magistrate Judge Willis. At his presentment, Dunlap made a bail application, which the Government opposed. After hearing the parties' arguments, Judge Willis acknowledged that the nature and circumstances of the offense were serious, but found that given that Dunlap had been released on bail in the state for the same conduct and had been compliant and his criminal history was relatively dated, there were bail conditions that could be imposed to assure that he returned to court and did not pose a danger to the community. Specifically, Judge Willis found that Dunlap could be released on a $50,000 personal recognizance bond secured by two financially responsible cosigners, with the additional condition of a curfew. On the evening of April 18, 2023, the Government sought to appeal Judge Willis's decision, and the Court scheduled a hearing for April 19, 2023, at 10:00 a.m.

April 19, 2023
Page 2

## B. Offense Conduct and Criminal History

In the early morning hours of December 31, 2022, Haljoubey Dunlap, the defendant, brandished and shot a firearm into the air several times on a public street in the Bronx after appearing to get into a verbal altercation with a woman. Specifically, surveillance video shows Dunlap was standing outside of a deli on Webster Avenue between 183rd and 182nd streets with several other individuals. *See* GX 1 (Northbound Video from Deli). He then appears to get into a verbal altercation with a woman and after the exchange of words, the woman and another man walk away from the group northbound toward 183rd. Shortly thereafter, Dunlap walks toward 182nd street, retrieves a firearm and starts walking toward the southeast corner of Webster Avenue and 183rd street. As he starts walking toward the corner, he appears to be holding a firearm in his right hand and before he reaches the corner raises the firearm in the air and fires it multiple times, which is reflected on the video through muzzle flashes. At least one of the individuals that had walked away from Dunlap still appears to be in the vicinity of 183rd Street and Webster Avenue at the time Dunlap shot the firearm and appears to run when Dunlap shoots the firearm. Moreover, despite the time of the incident, there were multiple individuals in the vicinity of Dunlap when he shot the firearm, including a woman at very close range.

By coincidence, Bronx Public Safety officers with the New York City Police Department ("NYPD") who were in the area arrived seconds later, as Dunlap was walking quickly toward 182nd street. As they arrived on scene, police officers heard and saw Dunlap discard an object into the street. As one officer approached and restrained Dunlap, another officer found a .45 caliber Ruger semi-automatic pistol underneath a car in the vicinity of where Dunlap had discarded an object. Dunlap was subsequently placed under arrest.[1] Dunlap did not waive his *Miranda* rights and elected not to speak to law enforcement.[2]

Other NYPD officers who responded to the scene in response to a 911 radio call of shots fired, recovered seven shell casings and 1 live round of ammunition from the vicinity of 183rd Street and Webster Avenue. An NYPD ballistics expert found that the shell casings that were recovered from the vicinity of 183rd Street and Webster Avenue were discharged from the .45 caliber Ruger semi-automatic pistol found underneath the car.

The Pretrial Services report reflects that the defendant has a concerning criminal history. In 1991, the defendant pleaded guilty to criminal possession of a loaded firearm in the third degree, in violation of New York Penal Code § 265.02. In 1998, the defendant pleaded guilty to criminal assault in the second degree with intent to cause serious physical injury, in violation of New York

---

[1] Dunlap's state criminal charges for the instant offense conduct remain pending. Dunlap was detained on those charges until early February when he satisfied certain conditions to be released on bail pending trial.

[2] During the bail hearing before Judge Willis, the Government proffered that the defendant had made several spontaneous statements during his arrest, which were captured on body-worn camera footage. In particular, the Government indicated that they recalled, but were not sure, that Dunlap stated in sum and substance that Dunlap had made a mistake. In re-reviewing the current draft of the spontaneous statements from the body-worn camera footage, Dunlap does not appear to have made a statement of that nature.

Penal Code § 120.05, and was ultimately sentenced to 5 years in prison. Based on the complaint report for that offense, the defendant and five others threw a victim onto the ground and beat the victim in the head, face and chest, which resulted in serious physical injury to the victim. In 2005, the defendant was arrested in Georgia for driving while his license was suspended or revoked, ultimately pleading nolo contendre and sentenced to twelve months' probation. In 2008, the defendant was arrested in Georgia for driving while his license was suspended or revoked, ultimately pleading nolo contendre and sentenced to twelve months' probation. In 2009, the defendant was arrested in Georgia for battery and cruelty to children which caused excessive physical or mental pain in the first degree, but those charges were ultimately dismissed. In 2012, the defendant was convicted in Georgia of driving under the influence ("DUI") of alcohol and sentenced principally to 1 day in prison and 11 months and 29 days of probation. And, in 2013, the defendant's probation for his DUI conviction was revoked for an unspecified violation and he was re-sentenced principally to 8 months and 2 days of probation.

## II. Applicable Law

Under 18 U.S.C. § 3145(a)(1), the Government may seek review of a magistrate judge's order of release pending trial by the District Court with jurisdiction over the case. District Courts conduct this review *de novo*. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Sierra*, No. 99 Cr. 962, 1999 WL 1206703, at *1 (S.D.N.Y. Dec. 16, 1999). The Court must order detention where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court may order detention based on risk of flight or danger to the community. In other words, the Court "does not need to find both bases are proven in order to order a defendant's detention." *United States v. Epstein*, 19 Cr. 490 (RMB), 2019 WL 3229190, at *4 (S.D.N.Y. July 18, 2019). The Government must show "by clear and convincing evidence that the defendant presents a danger to the community." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted).

The Court must consider four factors when considering a defendant's bail application: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g)

Finally, the Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

## III. Analysis

As set forth below, the defendant should remain detained in light of the significant danger he poses to the community.

April 19, 2023
Page 4

*First*, the nature and circumstances of the crime charged in the Indictment are serious. The defendant is charged with unlawfully possessing a loaded firearm while being a felon. As the Second Circuit has stated, "[t]he legislative history of the felon-in-possession provision confirms that Congress regarded convicted felons as persons 'who pose serious risks of . . danger to the community.'" *United States v. Dillard*, 214 F.3d 88, 95 (2d Cir. 2000) (citing legislative history of 18 U.S.C. § 922(g)); *see also United States v. Jones*, No. 11 Cr. 43 (JBW), 2011 WL 4014322, at *2 (E.D.N.Y. Aug. 30, 2011) ("Possession of a firearm by a convicted felon is a serious offense."); *United States v. Munlyn*, 607 F. Supp. 2d 394, 399 (E.D.N.Y. 2009) (concluding that U.S.C. § 922(g) is "a serious offense"). Beyond the inherent risk of violence associated with the offense, the purpose of the statute forbidding convicted felons from carrying firearms, "which is predicated on a defendant's failure to be reformed by the criminal justice system and a continuing disrespect for the law, highlights the crime's seriousness." *Munlyn*, 607 F. Supp. 2d at 399. Indeed, the risk of violence in this case was not abstract as the defendant severely escalated a verbal altercation by retrieving a loaded firearm and heading toward the individuals he had just been having a dispute with. While those individuals were still in the vicinity of the defendant, the defendant fired multiple rounds into the air, which jeopardized the safety of those individuals and others who had gathered around the defendant. The fact that the defendant was lucky that his actions did not result in serious physical injury to anyone does not mitigate the defendant's conduct or the callous disregard for the safety and wellbeing of the community that the defendant demonstrated.

*Second*, the proof against the defendant is overwhelming. The defendant was caught on surveillance video getting into a verbal dispute with several others, and after those individuals had walked away from the situation, the defendant refused to let the dispute end. Instead, he escalated the situation and retrieved a loaded firearm to emphasize his point. Dunlap then used that firearm in a menacing manner by firing multiple rounds into the air, which achieved his intended purpose, as those individuals ran away from Dunlap. *See* GX 1. NYPD officers who responded to the scene are expected to testify that within minutes of Dunlap shooting the gun, they heard and saw Dunlap discard an object into the street on Webster Avenue. As one officer approached and restrained Dunlap, another officer found a .45 caliber Ruger semi-automatic pistol underneath a car in the vicinity of where Dunlap had discarded an object. The body-worn camera footage from the officers who responded to the scene corroborate how these officers found the firearm Dunlap had used and the seven shell casings that were discarded after Dunlap shot the gun. Finally, an NYPD ballistics expert is expected to testify that the shell casings that were recovered from the vicinity of 183rd Street and Webster Avenue were discharged from the same .45 caliber Ruger semi-automatic pistol that Dunlap had fired and ultimately discarded on Webster Avenue.

*Third*, the history and characteristics of the defendant also weigh in favor of detention. The defendant's criminal history includes possessing a loaded firearm and a second-degree assault conviction. The second-degree assault conviction—which requires an "intent to cause serious physical injury" (see N.Y. PL § 120.05) is particularly troubling: the complaint reflects that the defendant was observed with a group of others brutally beating a victim in the head, face and chest. While his criminal history is dated, not only does it reflect the defendant's history of violent conduct, but also underscores that despite the defendant's contacts with the criminal justice system he has continued to demonstrate a complete disregard for the law and the safety of others. His failure to control his violent impulses, even at an older age, suggest that he has not been

April 19, 2023
Page 5

rehabilitated and will continue to pose a serious danger to the community. Accordingly, the defendant's commission of the instant offense given his criminal history militate in favor of continued detention.

In light of these factors, releasing the defendant on bail would not reasonably assure the safety of the community, particularly during this epidemic of gun violence. Indeed, the Second Circuit has made clear that even home confinement and electronic monitoring are inadequate to safeguard against defendants posing a threat to their communities. *See, e.g.*, *United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001); *United States v. Cinquemani*, 100 F.3d 941 (2d Cir. 1996). And here, given the defendant's prior criminal conduct, the instant offense conduct, and the strength of the evidence, there is no reason to believe the defendant would not continue to pose a danger to the community.

### IV.   Conclusion

For the reasons set forth above, the Government respectfully requests that the Court order the defendant to continue to be detained pending trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: *[signature]*
Aline R. Flodr
Assistant United States Attorney
(212) 637-1110